UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHEVRON ORONITE COMPANY LLC,                    CIVIL ACTION
Successor-in-interest to
CHEVRON CHEMICAL COMPANY                         NO. 18-2279

VERSUS                                           SECTION: M (4)

JACOBS FIELD SERVICES NORTH AMERICA, INC.,
Successor-in-interest to
J.E. MERIT CONSTRUCTORS, INC.

**ORDER & REASONS**

Before the Court are cross-motions for summary judgment filed by the plaintiff, Chevron Oronite Company LLC ("Chevron Oronite"), and the defendant, Jacobs Field Services North America, Inc. ("Jacobs"). Having considered the parties' briefs and the applicable law, the Court issues this Order & Reasons.

I.      **BACKGROUND**

This diversity action arises out of series of contracts between Chevron Chemical Company ("Chevron Chemical"), which Chevron Oronite succeeds in interest, and J.E. Merit Constructors, Inc. ("J.E. Merit"), which Jacobs succeeds in interest.[1] Chevron Oronite is a subsidiary of Chevron U.S.A., Inc.[2] From 1989 through 1993, Chevron Chemical engaged J.E. Merit to perform maintenance work, including providing welders, at Chevron Chemical's Belle Chasse facility.[3] Each contract contained a provision requiring J.E. Merit to indemnify Chevron Chemical against loss, damage, injury, liability, or death caused by J.E. Merit or connected with the contract or J.E. Merit's performance under the contract.[4]

---

[1] R. Docs. 28-2 at 1, 42-1 at 3.
[2] R. Docs. 28-2 at 1, 42-1 at 2.
[3] *See* R. Docs. 28-2 at 1-3, 42-1 at 3.
[4] R. Docs. 28-3 at 11, 28-4 at 10, 28-5 at 13, 28-6 at 14; *see* R. Docs. 28-2 at 1-2, 42-1 at 3.

Wayne Bourgeois worked as a welder for J.E. Merit (Jacobs) from 1989-1994.[5] In 2016, Bourgeois was diagnosed with mesothelioma.[6] In March 2017, Bourgeois sued various companies for which he worked, alleging exposure to asbestos.[7] Bourgeois alleged in relevant part that he was exposed to asbestos while working for J.E. Merit at Chevron Chemical's facility in Belle Chasse, Louisiana.[8]

Chevron Oronite tendered the lawsuit to Jacobs on July 24, 2017.[9] (The next day, Bourgeois died.[10]) On September 19, 2017, Jacobs rejected the tender, claiming that Chevron Oronite cited an inapplicable contract relating to warehouse workers.[11] Thereafter, Jacobs produced the applicable contracts in response to a subpoena *duces tecum* issued in the state-court *Bourgeois* proceeding, and counsel for Jacobs had conversations with counsel for Chevron Oronite regarding settlement negotiations among the parties to the state-court proceeding.[12] In a letter to Jacobs dated November 7, 2017, Chevron Oronite tendered the lawsuit a second time, referencing the applicable contracts Jacobs had produced in discovery, updating Jacobs about ongoing settlement negotiations, and again inviting it to defend Chevron Oronite in the *Bourgeois* lawsuit.[13] Jacobs again refused.[14] Nevertheless, Chevron Oronite continued to apprise Jacobs of the proposed settlement amounts and invited its participation in settlement discussions in late November and early December of 2017.[15] Jacobs repeatedly refused.[16] Chevron Oronite settled

---

[5] R. Docs. 28-8 at 11, 42-2 at 12 n.23.
[6] R. Doc. 28-9 at 16.
[7] R. Doc. 28-7.
[8] *Id.*; *see* R. Docs. 28-9 at 206-12, 28-15 at 4-5, 43-3 at 7.
[9] R. Doc. 28-12.
[10] R. Doc. 39-4.
[11] R. Doc. 28-13.
[12] R. Docs. 43-4, 43-5, 43-6.
[13] R. Doc. 28-14.
[14] *Id.* at 3.
[15] *Id.* at 4-5.
[16] *See id.*

the *Bourgeois* lawsuit on January 24, 2018, for $550,000.00.[17]

## II. PENDING MOTIONS

In its motion for summary judgment, Chevron Oronite contends that Jacobs must indemnify it for amounts Chevron Oronite incurred in defending and settling the *Bourgeois* lawsuit and in pursuing the instant action, with pre- and post-judgment interest.[18] Because Bourgeois' alleged exposure to asbestos occurred while he was employed by J.E. Merit at a Chevron facility, Chevron Oronite argues that Jacobs must honor its contractual obligation to indemnify Chevron Oronite.[19] And Chevron Oronite argues that it need only show that it was potentially liable to Bourgeois in order to recover because the indemnity arises pursuant to written contracts, or, alternatively, because Jacobs rejected a tendered defense.[20] Chevron Oronite further submits that depositions by Bourgeois and his industrial hygiene expert establish potential liability.[21] Finally, Chevron Oronite claims that the plain language of the contracts entitles it to attorney's fees and litigation costs in the instant and underlying actions.[22]

In opposition to Chevron Oronite's motion for summary judgment, Jacobs maintains that actual, not potential, liability is the appropriate standard for triggering indemnity here and that, regardless, disputed fact issues preclude summary judgment in Chevron Oronite's favor.[23] Specifically, Jacobs disputes whether Chevron Oronite's summary judgment evidence establishes Bourgeois' period of employment, Chevron Oronite's liability, and Chevron Oronite's entitlement to attorney's fees and costs.[24] Jacobs also contests the reasonableness of the settlement, urging

---

[17] R. Docs. 58-2, 39-2 at 1.
[18] R. Doc. 28-1 at 10.
[19] *Id.* at 7-8.
[20] *Id.* at 6.
[21] *Id.* at 8.
[22] *Id.* at 8-10.
[23] R. Doc. 42-2 at 10-14.
[24] *Id.* at 10-15.

that it would be improper to make such a finding on summary judgment.[25]

In its own cross-motion for summary judgment, Jacobs argues that it received insufficient notice to defend the suit, thus requiring Chevron Oronite to prove actual liability, which it cannot.[26] Additionally, Jacobs insists that the evidence upon which Chevron Oronite relies is insufficient to establish actual or potential liability because Bourgeois' deposition testimony is inadmissible under Federal Rule of Civil Procedure 32(a)(1)(A), and any expert testimony based on Bourgeois' testimony is itself inadmissible hearsay.[27] In opposition, Chevron Oronite contends that it was not required to give Jacobs notice of the *Bourgeois* suit because the indemnity is bottomed on written contracts.[28] Regardless, Chevron Oronite maintains that it gave reasonable notice of the suit, providing Jacobs with ample opportunity to defend and to participate in settlement negotiations.[29] Chevron Oronite dismisses Jacobs' evidentiary qualms, arguing first, that Chevron need demonstrate only its potential liability, and second, that the testimony in question does not amount to inadmissible hearsay as it is not offered for the truth of the matter asserted (that is, to prove actual liability), but instead is offered only to demonstrate the potential for liability.[30]

## III. LAW & ANALYSIS

### a. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates

---

[25] *Id.* at 6-10.
[26] R. Doc. 39-3 at 6-11.
[27] *Id.* at 11-18.
[28] R. Doc. 43 at 3.
[29] *Id.* at 3-7.
[30] *Id.* at 7-10.

4

the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). The substantive law identifies which facts are material. *Id.* Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Anderson*, 477 U.S. at 249-50; *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). Furthermore, a court must assess the evidence, review the facts, and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, __, 134 S. Ct. 1861, 1866 (2014); *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). Yet, a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*

5

*Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).  Nor must the court consider uncited evidence in the record. Fed. R. Civ. P. 56(c)(3).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial.  *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed. R. Civ. P. 56(c)(1)(A) & (c)(2).  Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden.  *See Celotex*, 477 U.S. at 322-25; Fed. R. Civ. P. 56(c)(B).  Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted.  *See Little*, 37 F.3d at 1075-76.

**b. Analysis**

**(i) Entitlement to indemnity – actual versus potential liability**

The threshold issue presented by the cross-motions for summary judgment is whether Chevron Oronite was required to establish actual liability or potential liability to Bourgeois when it made demand upon Jacobs for indemnification.  The legal framework for analyzing this issue was set out by the court in *Chevron Oronite Co., LLC v. Cajun Co.*, 2017 WL 3438340 (E.D. La. Aug. 10, 2017):

> As a general rule, an indemnitee such as Oronite must establish actual liability and the reasonableness of its settlement to recover from the indemnitor. But an indemnitee need only establish potential liability in certain situations.  The Fifth Circuit has provided:
>
> > "[An indemnitee] need only show potential (rather than actual) liability to recover indemnity where either (1) the defendant tenders

> the defense of the action to the indemnitor; (2) the claim for indemnity is founded upon a judgment; [or] (3) the defendant's claim is based on a written contract of insurance or indemnification."

> The requirement to show actual liability "does not apply in situations where the indemnitor was tendered the defense and refused it, or where the indemnitee's claim against the indemnitor is based on a written contract. Then potential liability need be shown."

*Id.* at *7 (quoting *Bourg v. Chevron U.S.A., Inc.*, 91 F.3d 141 (5th Cir. 1996), and *Gaspard v. Offshore Crane & Equip., Inc.*, 1998 WL 388597, at *9 (E.D. La. July 8, 1998); other citations omitted).[31] Relieving an indemnitee from proving actual liability protects it from "the awkward possibility of having to prove the original plaintiff's case against [itself], the original defendant." *Parfait v. Jahncke Serv., Inc.*, 484 F.2d 296, 304-05 (5th Cir. 1973). Once an indemnitee shows that it is potentially liable, the burden shifts to the indemnitor to show that any settlement is unreasonable. *Gilbert v. Offshore Prod. & Salvage, Inc.*, 1997 WL 149959, at *12 (E.D. La. Mar. 21, 1997) (citing *Wisconsin Barge Line, Inc. v. Barge Chem 300*, 546 F.2d 1125, 1129-30 (5th Cir. 1977)).

In this diversity case, Louisiana law is to like effect.[32] Louisiana's framework for analyzing the question of actual-versus-potential liability is similar to that set out by the court in *Chevron Oronite Co., LLC v. Cajun Co.*[33] Generally, an indemnitee must show actual liability upon demand of indemnification to recover from an indemnitor. *Vaughn v. Franklin*, 785 So. 2d 79, 87 (La. App. 2001). However, when the basis for indemnity is a written contract or when the

---

[31] *See also Terra Resources, Inc. v. Lake Charles Dredging & Towing, Inc.*, 695 F.2d 828, 831 (5th Cir. 1983); *Gaspard*, 1998 WL 388597, at *9 ("When an indemnitee settles with a plaintiff, without giving the indemnitor notice and an opportunity to take over the defense and/or acquiesce in the settlement, then the indemnitee must establish its actual liability and that the settlement was reasonable.").

[32] Because this Court has jurisdiction over this contract dispute under 28 U.S.C. § 1332, Louisiana substantive law and choice of law rules govern. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938).

[33] As a general proposition, Louisiana's framework for analyzing whether actual or potential liability is the appropriate standard for triggering indemnity is also virtually identical to that applied by federal courts in the Fifth Circuit under maritime law.

indemnitee tenders to the indemnitor its defense of the underlying lawsuit, the indemnitee need only prove potential liability and the reasonableness of any ensuing settlement. *Id.* (contract) (citing *Rovira v. LaGoDa, Inc.*, 551 So. 2d 790, 795 (La. App. 1989)); *Walters v. A-Way Tank Service, Inc.*, 802 So. 2d 1, 5 (La. App. 2000) (tender).

In its motion for summary judgment, Jacobs cites *Walters* and *Morris v. Schlumberger*, 445 So. 2d 1242 (La. App. 1984), for the proposition that the indemnitee must prove actual liability when the indemnitee fails to provide sufficient notice to the indemnitor – even when indemnity arises from a written contract.[34] The *Morris* court found equitable principles of indemnity apply when the contract is silent as to notice:

> Under equitable principles of indemnity, in order for a settling indemnitee to support his indemnity claim he must prove actual liability to the original plaintiff and that the amount paid in settlement was reasonable. To avoid having to prove actual liability, the indemnitee should offer the indemnitor before any settlement is concluded the choice of (1) approving the settlement or (2) taking over the indemnitee's defense. If the indemnitor refuses to take either course, then the indemnitee will only be required to show potential liability to the original plaintiff to support his claim for indemnity. *Parfait v. Jahncke Service, Inc.*, 484 F.2d 296 (5th Cir.1973). There is no rigid requirement that the indemnitee offer the above precise choice to the indemnitor. The primary concern is fairness to the indemnitor. If it can be shown that the indemnitor was afforded substantially the same protection that the above choice affords, then the indemnitee will have to show only potential liability. *Burke v. Ripp*, 619 F.2d 354 (5th Cir.1980). A formal tender of defense is not required, rather only an opportunity to defend is necessary. *Burke v. Ripp*, supra.

445 So. 2d at 1246.

Jacobs contends that Chevron Oronite failed to give it an opportunity to defend itself by requesting defense only after Chevron Oronite elicited Bourgeois' testimony that was harmful to J.E. Merit, and only after Bourgeois died, affording Jacobs no opportunity to cross examine Bourgeois, whose testimony, Jacobs claims, supplies "the entire factual basis on which Chevron

---

[34] R. Doc. 39-3 at 6.

Oronite's indemnity claim depends."[35]  In response, Chevron Oronite cites *Bourg* and *Parfait* for the proposition that a showing of actual liability does not apply when an indemnitee tenders the defense to an indemnitor, who refuses it.[36]  Chevron Oronite also maintains that the sufficiency of the tender is irrelevant to establishing the standard of potential liability when the indemnity arises under a written contract.[37]  Chevron Oronite nevertheless contends that it afforded Jacobs fair opportunity to defend the *Bourgeois* suit and to participate in settlement by formally tendering the defense on at least two occasions and informally apprising Jacobs of ongoing settlement negotiations throughout this period.[38]  Chevron Oronite further contends that Bourgeois, not Chevron Oronite, identified J.E. Merit as his employer at the outset of litigation.[39]  Jacobs replies that tendering the defense pursuant to a written contract does not preclude analyzing the reasonableness of the indemnitor's opportunity to defend under Louisiana law, as recognized in *Primeco, Inc. v. Specialty Coatings, Inc.*, 1995 WL 686767, at *2 (E.D. La.  Nov. 17, 1995).[40]

It is undisputed that the contracts containing the applicable indemnity provisions are written.  Nevertheless, because the Court holds that the summary judgment evidence establishes the sufficiency of Chevron Oronite's tender under the applicable law, this Court need not consider whether the existence of a written contract alone suffices to trigger the potential liability standard.  Chevron Oronite tendered the defense of the *Bourgeois* suit to Jacobs by letter on July 24, 2017.[41]  This letter erroneously demanded indemnification pursuant to a contract for warehouse workers, not for welders.[42]  Thereafter, Chevron Oronite contacted Jacobs on at least nine separate occasions

---

[35] *Id.* at 7-10.
[36] R. Docs. 28-1 at 6, 43 at 3.
[37] R. Doc. 43 at 3.
[38] *Id.* at 3-4; *see* R. Docs. 28-12, 28-14, 43-2, 43-7.
[39] R. Doc. 43 at 3-4.
[40] R. Doc. 60 at 1-3.
[41] R. Doc. 28-12.
[42] *See id.*; R. Doc. 39-3 at 9, 14 n.31.

regarding indemnification, communicating the range of proposed settlements and issuing a subpoena *duces tecum* for the relevant contracts between Chevron Chemical and J.E. Merit for welding services.[43] Jacobs denied the first tender on September 19, 2017, on the grounds that the contract did not apply to Bourgeois' employment as a welder, and alternatively, because any indemnification provision would not apply.[44] On October 31, 2017, Jacobs produced to Chevron Oronite the contracts applying to Bourgeois' employment.[45] Chevron Oronite issued a second demand letter on November 7, 2017, referencing the correct contracts and noting that settlement was imminent, given that Bourgeois' industrial hygiene expert had testified in deposition of Bourgeois' significant exposure to asbestos at the Belle Chasse facility.[46] Jacobs again denied tender.[47] In November and December of 2017, Chevron Oronite continued to keep Jacobs informed of settlement negotiations and invited Jacobs to participate.[48] Chevron settled on January 24, 2018, approximately two months after its second demand.[49]

Jacobs argues that Chevron Oronite's delay in tendering the *Bourgeois* suit unfairly disadvantaged Jacobs in its ability to defend the suit because Jacobs was not present for Bourgeois' perpetuation deposition and Bourgeois subsequently died. However, Jacobs cites no authority addressing prejudice to an indemnitor arising from the timing of discovery in the underlying suit. It is not uncommon that a tender is made after even significant discovery has been completed in the underlying action. Jacobs has submitted no summary judgment evidence to demonstrate that it would have or could have elicited any different information in the discovery of the *Bourgeois* suit had it been involved at an earlier juncture. Moreover, Jacobs' concern about its inability to

---

[43] R. Doc. 43-4.
[44] R. Doc. 28-13.
[45] R. Doc. 43-6; *see* R. Doc. 43-5.
[46] R. Doc. 28-14 at 1-2.
[47] *Id.* at 3.
[48] *Id.* at 4-5; R. Doc. 43-7.
[49] R. Doc. 58-2.

conduct discovery is misplaced: it is undisputed that Bourgeois worked for Jacobs,[50] and that his answers to interrogatories reflected this from the outset of litigation, before Bourgeois' perpetuation deposition.[51] Thus, Bourgeois' testimony is not "the entire factual basis on which Chevron Oronite's indemnity claim depends."[52]

In the two cases upon which Jacobs relied, the courts in *Walters* and *Primeco* placed emphasis on the timing of the indemnitee's notice to the indemnitor of settlement negotiations relative to the ensuing settlement. *See Primeco Inc.*, 1995 WL 686767, at *2; *Walters*, 802 So. 2d at 7. Here, Chevron Oronite tendered its defense to Jacobs approximately one week after receiving the relevant contracts from Jacobs.[53] And Chevron Oronite continually kept Jacobs apprised of settlement negotiations, even after Jacobs rejected the initial and subsequent tenders. Unlike the case in *Walters*, where the settlement was reached five months after the indemnitee provided a single notice to the indemnitor, settlement here was consummated after months of negotiation of which Jacobs was apprised and two months after the second tender.[54] Therefore, Jacobs had opportunity to defend and settle the *Bourgeois* suit on its own terms, but chose not to. Accordingly, potential liability is the appropriate standard to apply in assessing Jacobs' indemnity obligation under the contracts at issue here.

### (ii) Entitlement to indemnity – establishing potential liability

The Court must now decide whether the *Bourgeois* suit exposed Chevron Oronite to potential liability so as to trigger Jacobs' indemnity obligation under the contracts at issue. To establish potential liability, an indemnitee need only show "that the claim was not frivolous, that the settlement was reasonable, that it was untainted by fraud or collusion, and that the indemnitee

---

[50] *See* R. Docs. 28-8 at 11, 42-2 at 12 n.23.
[51] *See* R. Docs. 28-15 at 5, 43-3 at 7, 28-9 at 206-12, 42-1 at 4.
[52] R. Doc. 39-3 at 7-10.
[53] *See* R. Docs. 28-14 at 1-2, 43-6.
[54] *See* R. Doc. 28-14 at 4-5.

settled under a reasonable apprehension of liability." *Bourg v. Chevron*, 91 F.3d 141, 1996 WL 400351, at *3 (5th Cir. 1996) (quoting *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1218 (5th Cir. 1986)). Bourgeois sued Chevron Oronite's predecessor-in-interest for exposure to asbestos at its facility while he was employed by J.E. Merit as a welder.[55] It is undisputed that Chevron Chemical entered into four contracts with J.E. Merit (Jacobs' predecessor-in-interest) for maintenance work, under which J.E. Merit provided welders and by which J.E. Merit agreed to indemnify Chevron Chemical against claims related to such work.[56]

Section 3.4 of Contract No. K-2251, which was in effect from February 1989 to February 1990, provides:

> [J.E. Merit] shall indemnify and save harmless [Chevron Chemical] from and against any and all loss, damage, injury, liability to or death of any person (including an employee of [J.E. Merit] or indemnitee) or for loss of or damage to property or for loss or damage arising from liens, attachments or patent infringement, including claims and reasonable attorneys' fees relating to any of the foregoing, caused in whole or in part by any act or omission by [J.E. Merit], its employees or agents, in any way connected with this Agreement or [J.E. Merit's] performance hereunder whether or not an indemnitee was or is claimed to be concurrently or contributorily negligent, and regardless of whether liability without fault is imposed or sought to be imposed on, one or more of the indemnitees. The foregoing indemnification shall not apply where … such loss, damage, injury, liability, death or claim is the result of the negligence or willful misconduct of an indemnitee. …

Section 3.4 of Contract Nos. K-2542, -2961 and -3414, which cover consecutive one-year periods from February 1990 through February 1992, provides:

> [J.E. Merit] shall indemnify and save harmless [Chevron Chemical] from and against any and all loss, damage, injury, liability to or death of any person (including an employee of [J.E. Merit] or indemnitee) or for loss of or damage to property or for loss or damage arising from liens, attachments or patent infringement, including claims and reasonable attorneys' fees relating any of to the foregoing, caused in whole or in part by any act or omission by [J.E. Merit], its employees or agents, in any way connected with this Agreement or [J.E. Merit's] performance hereunder whether or not an indemnitee was or is claimed to be

---

[55] *See* R. Docs. 28-7 at 2, 6, 13-16; 28-8 at 11; 28-15 at 5.
[56] R. Docs. 28-3 (Contract No. K-2251), 28-4 (Contract No. K-2542), 28-5 (Contract No. K-2961), 28-6 (Contract No. K-3414).

concurrently or contributorily negligent, and regardless of whether liability without fault is imposed or sought to be imposed on, one or more of the indemnitees. The foregoing indemnification shall not apply where … such loss, damage, injury, liability, death or claim is the result of the sole negligence or willful misconduct of an indemnitee. …

Contract No. K-2251 does not include the adjective "sole" before the phrase "negligence or willful misconduct" in the last sentence of the above-quotation from Section 3.4, whereas each of the other contracts did include the adjective "sole" in this sentence. The indemnity at issue in this case, then, arises squarely from a set of written contracts.

While it is necessary for the indemnitee (Chevron Oronite) to establish that the original claim (the *Bourgeois* suit) is covered by the indemnity agreement, the indemnitee, under a potential liability standard, is not required to prove the case against itself. As in the insurance context, this means the indemnitee must establish that the indemnity agreement was in force as between the indemnitor and the indemnitee, and then, that the allegations of the original claim exposed the indemnitee to potential liability. *See, e.g., First Am. Title Ins. Co. v. Bowles Rice, LLP,* 2018 WL 316033, at *3 (N.D.W. Va. Jan. 5, 2018).

It is undisputed that the four contracts containing the indemnity agreement span the period of Bourgeois' alleged employment as a welder by J.E. Merit.[57] Moreover, there is no dispute that the four contracts place Jacobs, as J.E. Merit's successor-in-interest, in the role of indemnitor; Chevron Oronite, as Chevron Chemical's successor-in-interest, in the role of indemnitee; and Bourgeois, as an employee of J.E. Merit, in the role of claimant. However, Jacobs contends that unresolved issues of fact related to the exact period of Bourgeois' employment by J.E. Merit make summary judgment inappropriate. In his perpetuation deposition, Bourgeois testified that he worked one-and-a-half to two years for J.E. Merit at the Belle Chasse facility, after previously

---

[57] *See* R. Docs. 28-2 at 1-3, 42-1 at 3-4, 28-8 at 11, 28-15 at 5, 28-3 at 1, 42; 28-5 at 1; 28-6 at 1.

testifying that he worked there between 1981 and 1982.[58]  Jacobs argues that Bourgeois'

inconsistent testimony presents a material issue of fact as to "when Bourgeois' alleged exposures

while working for J.E. Merit at Chevron occurred, and … which, if any, of the four contracts at

issue is potentially implicated."[59]  Chevron Oronite contends that the timeline is clear, producing

Bourgeois' Social Security records to confirm that Bourgeois worked solely at J.E. Merit from

1989-1993, and for other employers in addition to J.E. Merit in 1994.[60]  Other than characterizing

Bourgeois' deposition testimony as inconsistent, Jacobs submits no summary judgment evidence

that questions Bourgeois' employment by J.E. Merit for at least 18 to 24 months sometime during

the period covered by the four contracts.[61]  Nor does Jacobs dispute that J.E. Merit provided

welding services and welders, including Bourgeois, to work at the Chevron facility under the four

contracts.  Accordingly, Chevron Oronite has established that the indemnity agreement was in

force at the time of the conduct alleged in the *Bourgeois* suit.

Jacobs then argues that summary judgment is nevertheless inappropriate because Chevron

Chemical's own negligence or willful conduct bars any contractual indemnity,[62] relying upon the

sentence in Section 3.4 of the contracts that reads: "The foregoing indemnification shall not apply

where … such loss, damage, injury, liability, death or claim is the result of the sole negligence or

willful misconduct of an indemnitee."  However, in this sentence, the word "sole" is expressly

used to modify the operative conduct of Chevron Chemical that would render the indemnity

agreement inapplicable.  There is no allegation in the *Bourgeois* suit that the injurious conduct was

solely that of Chevron Chemical.[63]  Moreover, under the express language of the applicable

---

[58] R. Doc. 42-2 at 12; *see* R. Doc. 28-9 at 207-08.
[59] R. Doc. 42-2 at 13.
[60] *See* R. Docs. 42-2 at 12-13, 28-8 at 11-12, 58 at 6-7.
[61] *See* R. Docs. 42-2 at 12-13, 28-9 at 208.
[62] *See* R. Doc. 42-2 at 13.
[63] *See* R. Doc. 28-7.

contracts, Jacobs' indemnity obligation adheres "whether or not [Chevron Chemical] was or is claimed to be concurrently or contributorily negligent, and regardless of whether liability without fault is imposed or sought to be imposed on [Chevron Chemical]." Taken together, then, these sentences in Section 3.4 signify that Chevron Chemical's alleged negligence does not negate Jacobs' indemnity obligation under at least three of the four contracts.

One of the four contracts is different,[64] as Contract No. K-2251 omits the word "sole" in the same sentence of Section 3.4 just discussed. As a result, that contract's Section 3.4 contains an internal contradiction with respect to any alleged negligence or willful conduct on the part of Chevron Chemical. On the one hand, the indemnity is unaffected by claims of negligence or liability without fault against Chevron Chemical; on the other hand, the indemnity is said not to apply where the claim is the result of Chevron Chemical's negligence or willful conduct. At a minimum, this internal contradiction creates an ambiguity and, hence, an issue of fact as would preclude summary judgment with respect to Contract No. K-2251. However, because this contract covers only twelve months and Bourgeois' uncontested period of employment by J.E. Merit as a welder at the Chevron facility was for at least 18 to 24 months, the Court's conclusion that a valid indemnity agreement existed between Jacobs and Chevron Oronite for at least a significant portion of the relevant timeframe remains unaltered, even if Contract No. K-2251 is disregarded for purposes of this motion.

The Court now turns to evaluating whether the summary judgment evidence establishes under a potential liability standard that Bourgeois' claims were "not frivolous," "untainted by fraud or collusion," and posed to Chevron Oronite "a reasonable apprehension of liability." *Bourg*, 91 F.3d 141, 1996 WL 400351, at *3. In doing so, the Court weighs whether the allegations in the

---

[64] *See* R. Docs. 28-3 at 11, 28-4 at 10, 28-5 at 13, 28-6 at 14.

*Bourgeois* suit presented a reasonable basis for Chevron Oronite's potential liability under the law. Because there is no contention that Bourgeois' claims were frivolous or tainted by fraud or collusion, Chevron Oronite's potential liability turns on whether it had a reasonable apprehension of liability to Bourgeois' claims. It is undisputed that Bourgeois alleged, in his state court pleadings, discovery responses, and deposition, that he worked for J.E. Merit when he was exposed to asbestos while working at the Belle Chasse facility, and that he was later diagnosed with mesothelioma.[65] Under the express language of the applicable contracts, indemnity is triggered if the claims were "caused in whole or in part by any act or omission by [J.E. Merit]" or are "in any way connected with [the contract between J.E. Merit and Chevron Chemical] or [J.E. Merit's] performance" under the contracts.

Because the claims in the *Bourgeois* suit seek recovery for Bourgeois' alleged exposure to asbestos while working for J.E. Merit during the period the contracts were in effect, there is no doubt, if allegations alone are sufficient,[66] that they implicate the contracts or the work performed under the contracts so as to trigger Jacobs' indemnity obligation. Citing Louisiana cases where indemnity was denied, Jacobs argues that Chevron Oronite cannot rely on Bourgeois' allegations but must submit "competent and admissible evidence in this case to show a possibility of liability."[67]

It is not entirely clear from the body of case law whether, in establishing potential liability, the allegations of the original suit will suffice if they fit within the contours of the indemnity agreement, or whether an indemnitee is required to put forward at least some evidence in support

---

[65] R. Doc. 42-1 at 3-4.

[66] Under the "eight-corners rule," allegations within the four corners of an insured's petition or complaint are sufficient to trigger a duty to defend when they also fall within the four corners of the insurance policy. *See, e.g., Vaughn v. Franklin*, 785 So. 2d 79, 84 (La. App. 2001); *Plaia v. Stewart Enterprises, Inc.*, 229 So. 3d 480, 504-05 (La. App. 2016).

[67] R. Doc. 39-3 at 11-12 (citing *Weaver v. CCA Indus., Inc.*, 2009 WL 1322290, at *13 (W.D. La. May 12, 2009); *Vaughn*, 785 So. 2d at 87-88; *Rovira v. LaGoDa, Inc.*, 551 So. 2d 790, 795 (La. App. 1989)).

of the allegations. What is clear, however, is that an indemnitee is not required to prove absolute liability (the case against itself). For example, in assessing potential liability, the Fifth Circuit in *Bourg* first examined the claimant's allegations of negligence against the indemnitee. 1996 WL 400351, at *3. The indemnitor, an alleged co-tortfeasor with the indemnitee, argued that the jury's verdict absolving it of negligence undermined the indemnitee's claim of potential liability for the same alleged negligence. The Fifth Circuit held that the jury's finding was irrelevant to an evaluation of the indemnitee's potential liability because the indemnitee made the decision to settle with the claimant prior to trial. *Id*. at *3-4.

The cases Jacobs cites discussing Louisiana law (*Weaver*, *Vaughn*, and *Rovira*)[68] do not call into question the standard for potential liability articulated and applied in *Bourg*, *Parfait*, *Fontenot*, and *Chevron Oronite v. Cajun*. In fact, the *Weaver* court indicated it would employ this same standard at trial in weighing the potential liability the parties had not asked the court to resolve in pretrial motions. *See Weaver*, 2009 WL 1322290, at *13 n.11. In *Vaughn*, the court explicitly considered the discovery in the underlying litigation, but concluded that the indemnitee failed to establish "***any*** potential liability of [the claimant]" under the applicable standard. 785 So. 2d at 87-88 (emphasis added). Finally, in *Rovira*, the court applied the standard, but held that the indemnitee had made no effort to demonstrate the potential liability of the claimant in the underlying litigation. 551 So. 2d at 795.

Even assuming that an assessment of potential liability requires some evidence in addition to the claimant's allegations in the underlying suit, Chevron Oronite has provided it here in the form of Bourgeois' deposition testimony and the testimony of his expert industrial hygienist. But Jacobs contends that Bourgeois' testimony, "the entire factual basis for Chevron Oronite's

---

[68] *See supra* note 67.

17

indemnity claim," is inadmissible under Federal Rule of Civil Procedure 32(a)(1)(A) because Bourgeois is deceased and Jacobs was not present or represented at his deposition or had reasonable notice of it.[69] Jacobs then contends that the expert's opinions are likewise inadmissible because they are predicated on Bourgeois' testimony.[70]

Jacobs' argument about the admissibility of Bourgeois' deposition testimony misses the point, which is not that the testimony can or cannot be used against Jacobs, but that it most certainly could have been used against Chevron Oronite in *Bourgeois*.[71] In that sense, it is proper for this Court to consider the deposition testimony for the purpose of weighing Chevron Oronite's potential liability in the original suit. For the same reasons, the experts' opinions concerning Bourgeois' exposure to asbestos at Chevron's facility are properly considered in assessing potential liability.

Bourgeois testified that he worked in the pipe racks, where old insulation was routinely stripped, and used asbestos-containing fire blankets while working for J.E. Merit at Chevron's facility.[72] Bourgeois also testified that he was not provided respiratory devices during his employment at Chevron.[73] Bourgeois' expert testified to Bourgeois' exposure to asbestos and increased likelihood of developing mesothelioma.[74] Considering the allegations and evidence developed in the underlying suit, there exists sufficient summary judgment evidence to establish that Chevron Oronite faced potential liability in *Bourgeois*.

In sum, the indemnity agreements were in effect when Bourgeois was allegedly exposed

---

[69] R. Doc. 39-3 at 14-15.

[70] *Id.* at 16-17.

[71] The tort cases cited by Jacobs where the court denied the admissibility of perpetuation depositions because the defendant had been unable to cross-examine the deceased are distinguishable from this case, where the deposition is sought to be used to demonstrate the potential liability of an indemnitee that had participated fully in the perpetuation deposition. *See French v. A.W. Chesterton Co.*, 2017 WL 4737260, at *2 (N.D. Ohio 10/19/17); *Trascher v. Territo*, 89 So. 3d 357, 364, 368 (La. 2012).

[72] R. Doc. 28-9 at 206-12.

[73] *Id.* at 38.

[74] *See* R. Doc. 28-10 at 5.

to asbestos while employed for J.E. Merit at Chevron's Belle Chasse facility, and Chevron Oronite has shown it was potentially liable to Bourgeois. Thus, Chevron Oronite has met its first hurdle to indemnification. Chevron Oronite must next show that the settlement was reasonable – an issue both parties agree remains to be tried.[75] Accordingly, in rendering summary judgment, this Court does not reach the issue of the reasonableness of the settlement.

### (iii)   Costs and attorney's fees

In seeking recovery for the amounts it incurred in defending and settling the *Bourgeois* lawsuit, including attorney's fees and costs for the underlying and present suit, Chevron Oronite claims that the contracts' indemnity provisions are similar to those analyzed in *Carrier v. Louisiana Pigment Co., L.P.*, 846 So. 2d 803, 806 (La. App. 2003), and *Naquin v. Louisiana Power & Light Co.*, 951 So. 2d 228, 231 (La. App. 2006), where both courts awarded attorney's fees incurred in defending the liability suit and enforcing the indemnity provision.[76] In *Carrier*, the indemnitor agreed to:

> indemnify, defend and hold harmless [the indemnitee] from and against all claims, causes of action, losses, damages, suits and liability of every kind, including all expenses of litigation, court costs, and attorney's fees for damage for damage to any property or for injuries, sickness or death of any person … caused by, arising out of or related, directly or indirectly, to any work or operations performed by [the indemnitor] … under or by reason of this Contract.

846 So. 2d at 806. The court reasoned that the plain language of the contract entitled the indemnitee to costs and attorney's fees incurred in enforcing the indemnity. *Id.* at 812. The court in *Naquin* also awarded costs and attorney's fees for the indemnification suit, considering the broad nature of the contract's indemnification provision and upholding the reasoning of the trial judge that "to be made whole, to be indemnified, means … we shouldn't even been [sic] here, so

---

[75] R. Doc. 58 at 4-5.
[76] R. Doc. 28-1 at 9-10.

whatever expenses and costs we incurred should be wiped out." 951 So. 2d at 232.

Jacobs contends that the contract does not explicitly provide for "costs" nor for attorney's fees in the context of defending tort claims like those asserted in *Bourgeois*.[77]  In pertinent part, Section 3.4 of the relevant contracts provides as follows:

> [J.E. Merit] shall indemnify and save harmless [Chevron Chemical] from and against ***any and all loss, damage***, injury, liability to or death of any person (including an employee of [J.E. Merit] or indemnitee) or for ***loss of or damage*** to property or for ***loss or damage*** arising from liens, attachments or patent infringement, ***including claims and reasonable attorneys' fees relating to any of the foregoing***, caused in whole or in part by any act or omission by [J.E. Merit], its employees or agents, in any way connected with this Agreement or [J.E. Merit's] performance hereunder whether or not an indemnitee was or is claimed to be concurrently or contributorily negligent, and regardless of whether liability without fault is imposed or sought to be imposed on, one or more of the indemnitees.[78] (Emphasis added.)

Jacobs argues that the phrase "reasonable attorneys' fees relating to any of the foregoing" does not apply to all three of the preceding disjunctive clauses, but must be limited to the immediately preceding clause, "loss or damage arising from liens, attachments or patent infringement."[79] Hence, Jacobs argues, because the *Bourgeois* suit does not involve claims arising "from liens, attachments or patent infringement," the contracts do not provide for an award of attorney's fees in a case such as this, which involves a tort action.  Jacobs asks that the contract be interpreted against the drafter (said to be Chevron Oronite) to deny any recovery of attorney's fees.[80]

Under Louisiana law, attorney's fees are only recoverable by contract or statute.  *Hoffman v. 21st Century N. Am. Ins. Co.*, 209 So. 3d 702, 707 (La. 2015).  The general rules of contract interpretation apply to indemnity agreements.  *Sovereign Ins. Co. v. Tex. Pipe Line Co.*, 488 So. 2d 982, 985 (La. 1986).  Before applying Louisiana Civil Code article 2057 or otherwise searching

---

[77] R. Doc. 42-2 at 14-15.
[78] R. Docs. 28-3 at 11, 28-4 at 10, 28-5 at 13, 28-6 at 14 (emphasis added).
[79] *Id.*
[80] *Id.* (citing La. Civ. Code art. 2057).

for the parties' intent, a court must first determine whether the plain language is "clear and explicit and lead[s] to no absurd consequences." La. Civ. Code arts. 2045, 2046. "Each provision … must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Id.* art. 2050. "When the parties intend a contract of general scope but, to eliminate doubt, include a provision that describes a specific situation, interpretation must not restrict the scope of the contract to that situation alone." *Id.* art. 2052.

Under the principles of contract interpretation, this Court holds that the plain and unambiguous language of Section 3.4 provides that reasonable attorney's fees should be awarded in connection with Chevron Oronite's defense and settlement of the *Bourgeois* suit and its pursuit of the instant suit. The antecedent referents for the phrase "including claims and reasonable attorneys' fees" are the common phrases "loss, damage, injury, liability to or death of," "loss of or damage to" and "loss or damage" in the three preceding disjunctive clauses. The phrase "including claims and reasonable attorneys' fees" modifies each of these three clauses and cannot be limited to the immediately preceding clause dealing with "loss or damage arising from liens, attachments or patent infringement." This is especially true in this instance where the phrase "including claims and reasonable attorneys' fees" is expressly said to apply broadly to "any of the foregoing." The use of "any of" to modify "foregoing" makes it clear that the phrase "including claims and reasonable attorneys' fees" is not limited to the immediately preceding clause, but must apply to "any of" (or each of) the three preceding disjunctive clauses. At bottom, to limit attorney's fees to claims involving patent infringement, attachments, and liens fails to give meaning to the conjunction "or" that separates each of the three disjunctive clauses preceding the phrase "including claims and reasonable attorneys' fees."

While Jacobs correctly notes that Section 3.4 nowhere expressly authorizes the recovery

of "costs,"[81] it cites no authority for narrowly interpreting the word "loss" as used in Section 3.4 to exclude ordinary "costs" of litigation. To the extent Chevron Oronite seeks to recover costs outside the ambit of ordinary costs – for example, expert witness fees not encompassed within the term "attorney's fees" or routine cost recovery – the Court holds that the indemnity agreement makes no provision for such recovery. *Cf. Crawford v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987) (expert witness fees in excess of statutory limits cannot be taxed as costs).

As with the reasonableness of the settlement, Chevron Oronite agrees to leave for further litigation the "exact amounts for fees and costs" it seeks to recover from Jacobs.[82] Thus, while the Court holds that Chevron Oronite is entitled to recovery attorney's fees it incurred in defending and settling the *Bourgeois* suit and in prosecuting this action, the reasonableness and amount of such recovery is left to be determined.

## IV.      CONCLUSION

Accordingly, IT IS ORDERED that Chevron Oronite's motion for summary judgment (R. Doc. 28) is GRANTED insofar as it seeks to establish that Chevron Oronite is entitled to indemnity under Contract Nos. K-2542, -2961, and -3414, but is DENIED insofar as it seeks indemnity under Contract No. K-2251 and insofar as it seeks to establish the reasonableness of the settlement of the *Bourgeois* suit.

IT IS FURTHER ORDERED that Chevron Oronite's motion for summary judgment (R. Doc. 28) that it is entitled to reasonable attorney's fees and costs is GRANTED insofar as it seeks attorney's fees, but DENIED insofar as it seeks costs apart from those ordinarily awarded by the clerk of court; the motion is also DENIED insofar as it seeks a particular amount of fees or to

---

[81] *See* R. Doc. 42-2 at 15.
[82] R. Doc. 58 at 4.

establish the reasonableness of the amount of attorney's fees incurred in defending and settling the *Bourgeois* suit and in prosecuting the instant action.

IT IS FURTHER ORDERED that Jacob's motion for summary judgment (R. Doc. 39) is GRANTED with respect to Contract No. K-2251, the reasonableness of the *Bourgeois* settlement, which remains for trial, and Chevron Oronite's entitlement to non-routinely-taxed costs under the indemnity agreement, but the motion is DENIED in all other respects.

New Orleans, Louisiana, this 10th day of October, 2018.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE