UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHEVRON ORONITE COMPANY LLC | CIVIL ACTION |
| VERSUS | NO. 18-2279 |
| JACOBS FIELD SERVICES NORTH AMERICA, INC. | SECTION: M (4) |

# FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter involves an indemnity dispute that arises out of a series of contracts between Chevron Chemical Company ("Chevron Chemical"), which plaintiff, Chevron Oronite Company LLC ("Chevron Oronite"), succeeds in interest, and J.E. Merit Constructors, Inc. ("J.E. Merit"), which the defendant, Jacobs Field Services North America, Inc. ("Jacobs"), succeeds in interest.[1] On March 2, 2018, Chevron Oronite filed a complaint against Jacobs, seeking to compel Jacobs to indemnify Chevron Oronite in connection with a lawsuit it had settled.[2] Jacobs answered denying that it owed defense or indemnity to Chevron Oronite.[3]

Pursuant to agreement of counsel at the final pretrial conference, the matter was submitted to the Court for decision on the papers, including the parties' trial memoranda,[4] proposed findings of fact,[5] proposed conclusions of law,[6] and trial exhibits. Having considered the evidence and the arguments of counsel, the Court announces its Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure. To the extent a finding of fact constitutes a conclusion of law, the Court adopts it as such. To the extent a conclusion of law constitutes a

---

[1] Exh. 6.
[2] R. Doc. 1.
[3] R. Doc. 10.
[4] R. Docs. 78 & 82.
[5] R. Docs. 76 & 81.
[6] R. Docs. 77 & 80.

finding of fact, the Court adopts it as such.

## **FINDINGS OF FACT**

### I. JURISDICTION

1. The Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the requisite amount in controversy is satisfied.

### II. THE PARTIES

2. Plaintiff Chevron Oronite is the successor-in-interest to Chevron Chemical under the series of contracts at issue in this matter.[7]

3. Defendant Jacobs is the successor-in-interest to J.E. Merit under the series of contracts at issue in this matter.[8]

4. Chevron Oronite is a wholly-owned subsidiary of Chevron U.S.A., Inc.[9]

### III. THE *BOURGEOIS* SUIT

5. From 1989 through 1993, Chevron Chemical engaged J.E. Merit to perform maintenance work, including providing welders, at Chevron Chemical's facility in Belle Chasse, Louisiana.[10] Each contract contained a provision requiring J.E. Merit to indemnify Chevron Chemical against loss, damage, injury, liability, or death caused by J.E. Merit or connected with the contract or J.E. Merit's performance under the contract.[11]

6. Wayne Bourgeois worked as a welder for J.E. Merit from 1989-1994.[12]

7. In 2016, Bourgeois was diagnosed with mesothelioma.[13]

---

[7] R. Doc. 74 at 5; Exh. 6.
[8] *Id*.
[9] *Id.*
[10] R. Doc. 72 at 1; Exh. 6.
[11] *Id*.
[12] R. Doc. 72 at 2.
[13] *Id*.

8. In March 2017, Bourgeois sued various companies for which he worked, alleging exposure to asbestos.[14] Bourgeois alleged in relevant part that he was exposed to asbestos while working for J.E. Merit at Chevron Chemical's Belle Chasse facility.[15]

9. Chevron Oronite tendered the lawsuit to Jacobs on July 24, 2017.[16] (The next day, Bourgeois died.[17]) On September 19, 2017, Jacobs rejected the tender, claiming that Chevron Oronite cited an inapplicable contract relating to warehouse workers.[18] Thereafter, Jacobs produced the applicable contracts in response to a subpoena *duces tecum* issued in the state-court *Bourgeois* proceeding, and counsel for Jacobs had conversations with counsel for Chevron Oronite regarding settlement negotiations among the parties to the state-court proceeding.[19]

10. In a letter to Jacobs dated November 7, 2017, Chevron Oronite tendered the lawsuit a second time, referencing the applicable contracts Jacobs had produced in discovery, updating Jacobs about ongoing settlement negotiations, and again inviting it to defend Chevron Oronite in the *Bourgeois* lawsuit.[20] Jacobs again refused.[21]

11. Nevertheless, Chevron Oronite continued to apprise Jacobs of the proposed settlement amounts (including Bourgeois' demand to Chevron Oronite of $895,000 as well as the range between which Chevron Oronite thought it could settle the case) and invited Jacobs' participation in settlement discussions in late November and early December of 2017.[22] Jacobs repeatedly refused.[23]

---

[14] R. Doc. 72 at 2; Exh. 1.
[15] *Id.*
[16] R. Doc. 72 at 2; Exh. 7.
[17] R. Doc. 72 at 2.
[18] R. Doc. 72 at 2; Exh. 7.
[19] R. Doc. 72 at 2.
[20] R. Doc. 72 at 2; Exh. 7.
[21] *Id.*
[22] *Id.*; Exh. 7 (Chevron Oronite said it could settle the case in the range of $500,000 to $600,000).
[23] R. Doc. 72 at 2; Exh. 7.

12. Chevron Oronite settled the *Bourgeois* lawsuit on January 24, 2018, for $550,000.[24] This amount fell in the middle of the settlement range Chevron Oronite had projected and communicated to Jacobs.

## IV. THE INDEMNITY AGREEMENTS

13. As a result of the series of contracts between Chevron Chemical and J.E. Merit, indemnity agreements between Chevron Oronite and Jacobs were in effect when Bourgeois was allegedly exposed to asbestos while employed for J.E. Merit at Chevron's Belle Chasse facility.[25]

14. The plain and unambiguous language of Section 3.4 of the indemnity agreements provides that Chevron Oronite may recover reasonable attorney's fees in connection with its defense and settlement of the *Bourgeois* suit and its pursuit of the instant suit against Jacobs.[26]

15. Section 3.4 of the indemnity agreements also provides for recovery of ordinary costs of litigation.[27]

## V. THE COMPLAINT AND ANSWER IN THE CAPTIONED CASE

16. On March 2, 2018, Chevron Oronite filed a complaint for breach of contract, alleging that Jacobs refused to satisfy its contractual obligation to indemnify Chevron Oronite.[28]

17. On April 19, 2018, Jacobs filed its answer, generally denying the allegations of the complaint on the basis that Chevron Oronite had no liability to Bourgeois in the underlying *Bourgeois* case and that Jacobs is not liable to Chevron Oronite for defense and indemnity of that case.[29]

---

[24] R. Doc. 72 at 2-3; Exhs. 8 & 9.
[25] R. Doc. 72 at 10-19; Exh. 6.
[26] R. Doc. 72 at 21; Exh. 6.
[27] R. Doc. 72 at 22; Exh. 6.
[28] R. Doc. 1.
[29] R. Doc. 10.

## VI. SUMMARY JUDGMENT

18. On October 10, 2018, on cross-motions for summary judgment,[30] this Court decided the threshold issue of whether Chevron Oronite was required to establish actual liability or potential liability to Bourgeois when it made demand upon Jacobs for indemnification.[31] This Court held that the summary judgment evidence established the sufficiency of Chevron Oronite's tender under Louisiana law as would call for application of the potential liability standard.[32] Because Jacobs had opportunity following the tender to defend and settle the *Bourgeois* suit on its own terms, but chose not to, this Court determined that potential liability is the appropriate standard to apply in assessing Jacobs' indemnity obligation under the contracts at issue here.[33] Under this standard, this Court further held that the *Bourgeois* suit exposed Chevron Oronite to potential liability as to trigger Jacobs' indemnity obligation under the contracts at issue because Chevron Oronite had a reasonable apprehension of liability to Bourgeois.[34] Even assuming that an assessment of potential liability requires some evidence in addition to the claimant's allegations in the underlying suit, this Court held that Chevron Oronite had provided such evidence in the form of Bourgeois' deposition testimony and the testimony of his expert industrial hygienist.[35]

19. Thus, Chevron Oronite had shown it was potentially liable to Bourgeois in the underlying suit and that it was entitled to attorney's fees and ordinary costs incurred in defending and settling the *Bourgeois* suit and in prosecuting the instant suit.[36] This ruling left for trial only the issues of (1) the reasonableness of the amount Chevron Oronite paid to settle the *Bourgeois*

---

[30] R. Docs. 28 & 39.
[31] R. Doc. 72 at 7-8.
[32] *Id.* at 8-11.
[33] *Id.*
[34] *Id.* at 11-18.
[35] *Id.* at 17-19.
[36] *Id.* at 19-22.

5

suit and (2) the amount of attorney's fees and costs Chevron Oronite should be awarded.[37]

## VII. THE REASONABLENESS OF THE *BOURGEOIS* SETTLEMENT

20. On March 9, 2017, Bourgeois filed suit in state court against numerous defendants, including Chevron Oronite, seeking damages related to mesothelioma caused by his alleged exposure to asbestos.[38]

21. As to Chevron Oronite, Bourgeois alleged he was exposed to asbestos while working for one and a half to two years as a welder for J.E. Merit at Chevron Chemical's Belle Chasse facility.[39]

22. Bourgeois was 65 years old when diagnosed with mesothelioma and died from mesothelioma approximately 16 months later.[40] When he died, Bourgeois had been married to his wife for 47 years, and he had three living children aged 44, 39, and 38.[41]

23. In the underlying case, the *Bourgeois* plaintiffs sued over two-dozen individually-named defendants grouped in the following categories: "employer defendants"; "premises defendants" (including Chevron Oronite); "premises contractor defendants"; "asbestos abatement contractor defendants"; "asbestos manufacturer defendants"; and "asbestos supplier defendants."[42]

24. In perpetuation depositions, Bourgeois testified that he was exposed to asbestos while working at or for certain entities (Avondale, H.B. Fowler, Williams-McWilliams, Good Hope Refinery, Payne & Keller, Chevron, Kostmayer, J.E. Merit, BP Oil Refinery, Performance, Exxon, Tenneco, Shell, Johns-Manville, Monsanto, and Comet Construction) from pipe insulation, fire blankets, gaskets, and gloves manufactured by unknown manufacturers and supplied by

---

[37] *Id*. at 19 & 22.
[38] Exh. 1.
[39] *Id.*
[40] Exh. 2 (11/30/16 Bourgeois deposition).
[41] Exhs. 2 & 4.
[42] Exh. 1.

unknown suppliers; or from being around his father and brother who worked at or for some of these entities, or workers at Cajun Insulation Company and other unknown insulator workers.[43] Bourgeois was also exposed to asbestos through his use of welding rods manufactured by unknown manufacturers and supplied by unknown suppliers.[44]

25. In light of these exposures to asbestos, Jacobs argues that Chevron Oronite could have potentially shared liability with at least two-dozen other persons or entities (including Avondale; unknown manufacturers of pipe insulation; unknown suppliers of pipe insulation; unknown manufacturers of asbestos fire blankets; unknown suppliers of asbestos fire blankets; H.B. Fowler; Williams-McWilliams; Good Hope Refinery; unknown insulator workers; Payne & Keller; Kostmayer; J.E. Merit; unknown manufacturers of gaskets; unknown suppliers of gaskets; BP Oil; Performance; Exxon; unknown manufacturers of asbestos gloves; unknown suppliers of asbestos gloves; Tenneco; Shell; Cajun Insulation Company; Johns-Manville; Monsanto; Comet Construction; unknown manufacturers of welding rods; unknown suppliers of welding rods), so that all twenty-four of these other persons or entities should be deemed to share equal responsibility with Chevron Oronite for Bourgeois' mesothelioma.[45] In sum, Jacobs asserts: "Certainly, nothing about the evidence suggests that Chevron Oronite was more or less liable than any other entity Bourgeois identified."[46]

26. But the obverse is equally true: there is nothing about the evidence that conclusively establishes that Chevron Oronite's share of the potential liability for Bourgeois' claims was less than the settlement amount as a proportion of the total claim value.

---

[43] Exh. 2 (11/30/16 & 6/30/17 Bourgeois depositions).
[44] Exh. 3 (11/1/17 Garza deposition); *see* R. Docs. 76 at 1-5, 78 at 8-12.
[45] R. Doc. 78 at 13-14.
[46] *Id.* at 14.

27. In its submissions to the Court, Jacobs has made no effort to demonstrate that the settlement amount ($550,000) Chevron Oronite paid to Bourgeois was unreasonable, because Jacobs insists that Chevron Oronite had the affirmative burden to show that the amount was reasonable and that Chevron Oronite has not carried its burden. As a consequence, Jacobs contends that the Louisiana law in effect at the time of the alleged asbestos exposures and on the date of Bourgeois' death requires that the potential damages on Bourgeois' claims be shared equally among all defendants alleged to have caused any asbestos exposure contributing to Bourgeois' mesothelioma.

28. Jacobs recites the Louisiana law applicable to Bourgeois' claims and any assessment of the reasonableness of a settlement of such claims, to be as follows:[47]

   a. The substantive law in effect at the time of an asbestos claimant's "repeated tortious exposures resulting in continuous, on-going damages" is the law that governs a mesothelioma plaintiff's own claim or a survival claim arising from a mesothelioma patient's death. *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1066 (La. 1992).

   b. The substantive law in effect at the time of a mesothelioma patient's death is the law that governs a wrongful death claim. *Meredith v. Asbestos Corp.*, 707 So. 2d 1334, 1336 (La. App. 1998).

   c. In 1980, Louisiana adopted a comparative fault system to require loss apportionment in multi-party litigation. "Since the adoption of a pure comparative fault system, it has been the task of the factfinder to allocate shares of negligence." *Keith v. U.S. Fid. & Guar. Co.*, 694 So. 2d 180, 183 (La. 1997).

   d. Jacobs urges that, because the alleged exposures at issue here (1989-1993) post-date Louisiana's enactment of a comparative fault regime, determining the probable amount of a total judgment for which Chevron Oronite may have been liable due to the alleged exposures in the *Bourgeois* case requires consideration of the law applicable both at the time of Bourgeois' death (wrongful death claim) as well as at the time of the alleged exposures (survival claim).

   e. Under the post-1980 comparative fault law, fault is apportioned to all liable parties and non-parties, even those immune or whose identity is unknown. *See, e.g., Petroleum Rental Tools, Inc. v. Hal Oil & Gas Co.,* 701 So. 2d 213 (La. App. 1997). Evaluating Chevron Oronite's risk of exposure in the *Bourgeois* case therefore

---

[47] R. Doc. 77 at 2-6; *see also* R. Doc. 78.

requires consideration of the potential extent to which fault for Bourgeois' mesothelioma could have been allocated to persons and entities other than Chevron Oronite.

f. Under Louisiana Civil Code article 2324, had the *Bourgeois* plaintiffs obtained a wrongful death judgment, Chevron Oronite would have been liable only for that portion corresponding to its own percentage of allocated fault, except that for the period at issue (1989-1993), when the alleged exposures occurred, an immune employer's fault must be reallocated to the other culpable tortfeasors. *See, e.g., Fleniken v. Entergy Corp.,* 780 So. 2d 1175 (La. App. 2001).

g. Until Louisiana's 1975 revision of La. R.S. 23:1031.1, the Louisiana Workers Compensation Act did not shield employers from liability in mesothelioma claims. *Rando v. Anco Insulations Inc.,* 16 So. 3d 1065, 1071 (La. 2009).

h. In mesothelioma cases, Louisiana courts have in recent years affirmed wrongful death damage awards for surviving spouses in the "high" range of $900,000 to $2,500,000 and for adult children in the "high" range of $250,000 to $750,000. *See Zimko v. American Cyanamid,* 905 So. 2d 465 (La. App. 2005) ($2,500,000 to widow of 55-year-old mesothelioma decedent); *Oddo v. Asbestos Corp.,* 173 So. 3d 1192 (La. App. 2015) ($900,000 to widow of 81-year-old mesothelioma decedent); *Williams v. Placid Oil Co.,* 224 So. 3d 1101 (La. App. 2017) ($750,000 to each adult child of 59-year-old deceased mother); *Roberts v. Owens-Corning Fiberglass Corp.,* 878 So. 2d 631 (La. App. 2004) ($250,000 to each adult child of deceased father).

i. In mesothelioma cases, Louisiana courts have in recent years affirmed survival damage awards in the "high" range of $1,000,000 to $5,000,000. *See Terrance v. Dow Chem. Co.,* 971 So. 2d 1058 (La. App. 2007) ($5,000,000 survival award for death of 64-year-old man four months after initial diagnosis); *Roberts,* 878 So. 2d at 643 ($3,500,000 survival-damage award in a case where the decedent died one year after his mesothelioma diagnosis); *Zimko,* 905 So. 2d at 474 ($1,000,000 survival award for death of 55-year-old man seven months after initial diagnosis).[48]

---

[48] In addition to these case examples cited by Jacobs, Chevron Oronite points the Court to the following verdicts out of the Civil District Court of Orleans Parish, asking the Court to take judicial notice of them (R. Doc. 82 at 5-6): *Foret v. Taylor-Seidenbach, Inc.,* 2015-9079 ($5.5 million in survival damages for death of 70-year-old man survived by wife of 54 years and 3 children); *Mueller v. E.I. DuPont de Nemours & Co.,* 2015-10051 ($12 million in survival and wrongful death damages for death of 89-year-old man survived by wife and daughter); *Jones v. Am. Emp'rs Ins. Co.,* 2014-6711 ($5.5 million in survival damages in living mesothelioma case); *Kenney v. A.W. Chesterton,* 2011-636 ($7.55 million in survival damages in living mesothelioma case); and *Schulte v. CBS Corp.,* 11-12718 ($12 million in survival damages in living mesothelioma case). Courts may take judicial notice of matters of public record, and Jacobs has not objected to the Court's doing so. Thus, the Court will consider the jury verdicts in the same vein as it considers the cases Jacobs cites.

29. Jacobs did not adduce any evidence regarding the comparative role the alleged exposures played in causing Bourgeois' mesothelioma. Nor did Jacobs attempt to rank the alleged exposures in order of the degree to which each may have played a role in Bourgeois' disease.

30. For these reasons, Jacobs has not satisfied its burden of proving that Chevron Oronite's settlement with the *Bourgeois* plaintiffs was not reasonable.

31. Assuming a total affirmed judgment mirroring those in the comparable cases identified by both Jacobs and Chevron Oronite (*see* Finding of Fact ¶28(h) & (i) and note 48, *supra*) the $550,000 Chevron Oronite paid to settle the *Bourgeois* falls well within the range of damage awards in those cases.

32. Accordingly, the amount Chevron Oronite paid to settle the *Bourgeois* lawsuit was reasonable.

33. In sum, the indemnity agreements in the series of contracts between Chevron Chemical and J.E. Merit require Jacobs to indemnify Chevron Oronite for the entire settlement amount of $550,000 it paid to settle the *Bourgeois* suit.

## VIII. COSTS AND ATTORNEY'S FEES

34. The hourly attorney and paralegal rates paid by Chevron Oronite for legal services in the defense of the underlying *Bourgeois* suit and in the instant suit (*i.e.*, $350 and $290 for partners, $215 and $190 for associates, and $115 and $100 for paralegals) are well within the range of fees found to be reasonable in this District.[49]

35. The number of total hours Chevron Oronite expended for legal services in defending and settling the *Bourgeois* suit and in prosecuting the instant suit against Jacobs is reasonable.[50]

---

[49] Exh. 10. *See* Conclusion of Law ¶21, *infra*.
[50] *Id.*

36. The average hourly rates, in light of the total number of hours expended, are reasonable.

37. Chevron Oronite incurred $99,333.50 in attorney's fees and $8,279.68 in ordinary litigation costs in defending and settling the *Bourgeois* suit.[51]

38. The total amount of $107,613.18 Chevron Oronite incurred in attorney's fees and costs in defending and settling the *Bourgeois* suit is reasonable.

39. Chevron Oronite incurred $146,016.50 in attorney's fees and $18,628.66 in costs prosecuting the instant suit against Jacobs.[52]

40. The total amount Chevron Oronite incurred in attorney's fees in prosecuting the instant suit is reasonable.

41. Of the $18,628.66 in costs Chevron Oronite incurred in prosecuting the instant suit, $16,380.00 consists of unrecoverable expert witness fees, leaving the amount of $2,248.66 in ordinary litigation costs, which the Court finds is reasonable.

## CONCLUSIONS OF LAW

**I. THE LAW GOVERNING REASONABLENESS OF SETTLEMENTS IN POTENTIAL LIABILITY CASES**

1. On summary judgment, this Court held that Chevron Oronite's tender to Jacobs, as indemnitor, of the defense of the *Bourgeois* suit was sufficient under Louisiana law for application of the potential liability standard – that is, that Chevron Oronite need only show that it was potentially liable to Bourgeois to trigger Jacobs' indemnity obligation to Chevron Oronite under the contracts at issue.[53]

---

[51] *See* Exh. 10.
[52] *See* Exh. 11.
[53] R. Doc. 72 at 6-11.

2. On summary judgment, this Court also held that Chevron Oronite established that the *Bourgeois* suit exposed it to potential liability so as to trigger Jacobs' indemnity obligation under the contracts at issue.[54]

3. Having established on summary judgment that the indemnity agreements were in effect when Bourgeois was allegedly exposed to asbestos while employed by J.E. Merit at Chevron's Belle Chasse facility, and that Chevron Oronite was potentially liable to Bourgeois for the claims asserted in the underlying *Bourgeois* suit, Chevron Oronite met its first hurdle to indemnification. The next question is whether the $550,000 settlement Chevron Oronite paid to Bourgeois was reasonable – an issue the parties agreed would be tried on the submissions made to the Court on November 5, 2018.

4. In *Wisconsin Barge Line, Inc. v. Barge Chem 300*, the Fifth Circuit held that, once the indemnitee shows that it was potentially liable, the burden shifts to the indemnitor to show that the settlement the indemnitee entered with the plaintiff in the underlying case, without the indemnitor's prior approval, was unreasonable.[55]

5. Jacob contends that the rule of law stated in *Wisconsin Barge Line* (the "*Wisconsin Barge Line* rule") is limited to maritime cases. Citing *Parfait v. Jahncke Serv. Inc.*, 484 F.2d 296 (5th Cir. 1973), and *Molett v. Penrod Drilling Co.*, 826 F.2d 1419 (5th Cir. 1987), Jacob contends that, under Louisiana law, the indemnitee, not the indemnitor, bears the burden of demonstrating that the settlement was reasonable.

6. In *Parfait*, a maritime case rather than one arising under Louisiana law, the Fifth Circuit held that the indemnitee did carry its burden of showing its potential liability (by keeping

---

[54] *Id.* at 11-19.
[55] *Wisconsin Barge Line, Inc. v. Barge Chem 300*, 546 F.2d 1125, 1127, 1129-30 (5th Cir. 1977); *Chevron Oronite Co., LLC v. Cajun Co.*, 2017 WL 3438340, at *7 n.75 (E.D. La. Aug. 10, 2017); *Gilbert v. Offshore Prod. & Salvage, Inc.*, 1997 WL 149959, at *12 (E.D. La. Mar. 21, 1997) (citing *Wisconsin Barge Line*).

the indemnitor informed of settlement negotiations and by tendering defense of the original action to the indemnitor) and also carried its burden of showing that the settlement was reasonable in amount. 484 F.2d at 305-06. In so holding, the court did not engage in a highly-developed analysis of the applicable law. Had it done so, the applicable law would have been maritime law, not Louisiana law. Thus, contrary to Jacob's contention, *Parfait* does not stand for the proposition that, under Louisiana law, the indemnitee in a potential-liability case bears the burden of demonstrating that the settlement was reasonable.

7. Having been rendered in 1977, the *Wisconsin Barge Line* rule is the more recent pronouncement of the law in the Fifth Circuit on who bears the burden of showing the reasonableness or unreasonableness of a settlement in a potential-liability case, as opposed to the holding of *Parfait*, which was decided in 1973. And the *Wisconsin Barge Line* rule has been followed consistently in maritime and other potential-liability cases decided in the Fifth Circuit since 1977. *See Chevron Oronite v. Cajun,* 2017 WL 3438340, at *7 n.75 (diversity); *Gilbert*, 1997 WL 149959, at *12 (maritime).

8. *Molett* was a diversity case involving a product liability claim governed by Louisiana law. However, in articulating the relevant law, the Fifth Circuit relied on no Louisiana law or cases, but instead, based its statement of the law on the line of maritime cases including *Parfait*:

> We have held that an indemnitee who settles a claim against it without first tendering the settlement for approval or offering the defense in exchange for a hold-harmless agreement must, to recover from its indemnitor, prove that it was actually liable for the amount paid, the settlement was reasonable, and the indemnitor was not prejudiced by the indemnitee's failure either to inform the indemnitor of settlement negotiations or to tender it the defense of the suit. Otherwise, the indemnitee might spend the indemnitor's money without either a judgment of the court or the indemnitee's agreement. Such proof is not, of course, required if the indemnitee's claim is founded on judgment or on a written contract establishing some other basis for indemnification, and actual liability need not be shown if the

13

> indemnitor was tendered the defense and refused it. Even if the indemnitee tenders the defense and is not required to show actual liability, it must demonstrate both its potential liability to the original plaintiff and the reasonableness of the settlement.

826 F.2d at 1429 (citations omitted). Moreover, the *Molett* court cited to no case, whether arising under maritime or Louisiana law, for the specific proposition that the indemnitee, in a potential-liability case, bears the burden of demonstrating the reasonableness of the settlement. Most telling, even if it had, the proposition would have been dicta in *Molett* because the court held that the indemnitee was required to demonstrate its actual liability, having failed to establish the prerequisites for applying a potential-liability standard (by tendering to the indemnitor defense of the suit or tendering the proposed settlement for approval). Thus, again contrary to Jacob's contention, *Molett* was neither a potential-liability case nor one where the operative legal proposition was decided under Louisiana law.

9. Consequently, neither *Parfait* nor *Molett* stands for the legal proposition for which Jacobs cites them – namely, that, under Louisiana law, the indemnitee, not the indemnitor, bears the burden of demonstrating that the settlement was reasonable in a potential-liability case.

10. The only non-maritime potential-liability case cited to the Court that applies the *Wisconsin Barge Line* rule is *Chevron Oronite v. Cajun*, 2017 WL 3438340, at *7 n.75. In that case, the court generally applied Louisiana law to other issues, but did not cite any Louisiana case in support of the *Wisconsin Barge Line* rule.

11. Thus, neither party has cited any Louisiana decisions reflecting an application of the *Wisconsin Barge Line* rule in potential-liability cases, but nor have they cited any Louisiana decisions to the contrary.

12. In addressing the topic of settlements entered into by an insured with an injured party, a leading insurance treatise concludes: "[An insurer] can deny liability only to the extent

14

that the settlement amount was excessive in light of the facts known or reasonably available to the insured at the time of settlement. The burden should, in general, be on the insurer, since its breach of contract [*i.e.,* by failing to extend coverage] gave rise to the insured's unauthorized settlement, to prove that the settlement amount was unreasonable. If the insured paid the settlement with its own money, the settlement amount should be presumed to be reasonable."[56]

13. Considering the foregoing analysis, this Court makes an "*Erie* guess"[57] that a Louisiana court in a potential-liability case would apply the *Wisconsin Barge Line* rule, in step with the prevailing trend of federal cases in the Fifth Circuit and consistent with the guidance of a leading insurance treatise, to say that once the indemnitee shows that it is potentially liable, the burden shifts to the indemnitor to show that the settlement was unreasonable.

14. Because Chevron Oronite has already demonstrated that it is potentially liable,[58] Jacobs bears the burden of showing that the settlement Chevron Oronite entered with Bourgeois was unreasonable. In other words, at this juncture, Jacobs must indemnify Chevron Oronite for the full settlement amount unless Jacobs can show that the settlement amount was unreasonable.

15. Because Jacobs bears the burden of demonstrating that the $550,000 settlement Chevron Oronite paid to Bourgeois was unreasonable, and because Jacobs has not adduced any evidence concerning the extent to which any of the claimed exposures to asbestos caused by other

---

[56] 2 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 6:29 (6th ed. Mar. 2018 update) (citations omitted).

[57] When evaluating issues of state law, if no decision of the state's highest court resolves the matter, federal courts make an *Erie* guess as to how the court would. *In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 210 (5th Cir. 2018) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). If the court must make an *Erie* guess on an issue of Louisiana law, the court will decide the issue the way it believes the Supreme Court of Louisiana would decide it. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546-47 (5th Cir. 2004). If guidance from state cases is lacking, it is not for federal courts to adopt innovative theories under state law. *Cf. Meador v. Apple, Inc.*, 911 F.3d 260, 269 (5th Cir. 2018). The Fifth Circuit has indicated that where an *Erie* guess is required, absent evidence to the contrary, it presumes that the state court would adopt the prevailing rule if called upon to do so. *See Hensley v. E. R. Carpenter Co.*, 633 F.2d 1106, 1109 (5th Cir. 1980). In doing so, a court may consult a variety of sources, including, *inter alia*, the general rule on the issue as well as treatises. *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 940 (5th Cir. 1999).

[58] *See* R. Doc. 72.

*Bourgeois* defendants contributed to Bourgeois' mesothelioma to any greater or lesser degree than did the exposures at Chevron's Belle Chasse facility during the 1989-1993 timeframe as to which Chevron Oronite has established Jacobs' potential liability, the Court cannot conduct the assessment of comparative fault Jacobs contends is required by the law it cites. Hence, Jacobs has not borne its burden of showing that the settlement was unreasonable.

16. As a consequence, Jacobs is liable to indemnify Chevron Oronite for the full amount of the settlement ($550,000) Chevron Oronite paid to settle the *Bourgeois* case.

## II. THE LAW GOVERNING ATTORNEY'S FEES AND COSTS

17. On summary judgment, this Court also held that, under the indemnity agreements between J.E. Merit and Chevron Chemical, Chevron Oronite is entitled to recover from Jacobs the attorney's fees and ordinary costs of litigation Chevron Oronite incurred in defending and settling the *Bourgeois* suit and in prosecuting the instant action against Jacobs to enforce the indemnity.[59]

18. Chevron Oronite bears the burden of demonstrating the amount and reasonableness of the fees and costs it incurred in defending and settling the *Bourgeois* suit and in prosecuting the instant action to enforce the indemnity. *See Abshire v. Mar-Con, Inc.*, 1998 WL 404796, at *2 (E.D. La. July 16, 1998).

19. The trial court is vested with great discretion in assessing the reasonableness of attorney's fees and costs and in arriving at an award. *See*, *e.g.*, *NOP, LLC v. Kansas*, 2011 WL 1485287, at *2 (E.D. La. Mar. 23, 2011) (applying Louisiana law).

20. Determination of reasonable attorney's fees is a two-step process that begins with determination of the "lodestar" amount.

> A lodestar is calculated by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work. After making this calculation, the district court may decrease or enhance the lodestar based on the relative

---
[59] R. Doc. 72 at 19-22.

> weights of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).
>
> *Heidtman v. County of El Paso,* 171 F.3d 1038, 1043 (5th Cir. 1999) (citing *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992); *Shipes v. Trinity Indus.,* 987 F.2d 311, 319-20 (5th Cir. 1993)). The *Johnson* factors are:
>
>> (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases.
>
> *Johnson,* 488 F.2d at 717-19.

*Pacific Dawn, L.L.C. v. New Orleans Marine Servs., Inc.,* 2012 WL 14269, at *1 (E.D. La. Jan. 14, 2012).

21. Courts in this District have found hourly rates for attorneys in the range between $325 and $410 for partners and $225 and $275 for associates and for paralegals in the range of $95 to $100 to be reasonable. *See*, *e.g.*, *Funez v. EBM*, 2018 WL 5004806, at *3 (E.D. La. Oct. 16, 2018 (finding partner rate of $350/hour and paralegal rate of $100/hour both reasonable); *Soonhee Kim v. Ferdinand,* 2018 WL 1635795, at *4 (E.D. La. Apr. 5, 2018) (finding rate of $410/hour is typical for partners in New Orleans community); *DirectTV, LLC v. Ertem*, 2015 WL 459398, at *3 (E.D. La. Feb. 3, 2015) (approving hourly rates of $350 for partners, $250 for associates, and $95 for paralegals); *Dardar v. T&C Marine, L.L.C.*, 2018 WL 3950396, at *6 (E.D. La. May 3, 2018), *adopted*, 2018 WL 3927501 (E.D. La. Aug. 16, 2018) (finding partner rate of $350/hour and associate rate of $225/hour reasonable); *M C Bank & Tr. Co. v. Suard Barge Serv., Inc.*, 2017 WL 6344021, at *2 (E.D. La. Dec. 12, 2017) (finding partner rates of $395/hour and $350/hour and associate rate of $225/hour reasonable); *Offshore Marine Contractors, Inc. v. Palm Energy*

*Offshore, LLC*, 2014 WL 5039670, at *8-9 (E.D. La. Sept. 25, 2014) (approving partner rates of $325/hour, associate rates of $275/hour and $225/hour, and $100/hour for paralegals).

22. Ordinary costs of litigation are included within the term "loss" as used in Section 3.4 of the indemnity agreements and are owed by Jacobs to Chevron Oronite as a part of its indemnity obligation under the applicable contracts between Chevron Chemical and J.E. Merit.[60]

23. Costs outside the ambit of ordinary costs of litigation (for example, expert witness fees, *cf. Crawford v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987)) are not reasonable under Section 3.4 of the indemnity agreements.

24. "The general rule in Louisiana is that legal interest runs from the due date of the obligation in question." *In re Settoon Towing, L.L.C.*, 720 F.3d 268, 285 (5th Cir. 2013) (quotation omitted) (citing *Arceneaux v. Amstar Corp.*, 969 So. 2d 755, 785 (La. App. 2007) (insurer liable to insured for prejudgment interest on amount insured paid third parties in settlement from date of payment)).

## CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that judgment be entered in favor of Chevron Oronite Company, LLC and against Jacobs Field Services North America, Inc. on Chevron Oronite's Complaint in the amount of $550,000.00 for the full amount of the *Bourgeois* settlement, together with prejudgment interest from the date Chevron Oronite paid the settlement amount, plus post-judgment interest; and $107,613.18 for attorney's fees and costs incurred by Chevron Oronite in defense of the *Bourgeois* suit, and $148,256.16 for the attorney's fees and costs incurred by Chevron Oronite in

---

[60] R. Doc. 72 at 21-22.

prosecuting the captioned suit against Jacobs, together with post-judgment interest on the total amount awarded for fees and costs.

New Orleans, Louisiana, this 23rd day of January, 2019.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE